# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ROBERT CHAVIRA,

Petitioner,

v.

J. SOTO, Warden, et al.,

Respondents.

Case No.: 15cv1997-WQH (BGS)

**ORDER**

**(1)  DENYING MOTION FOR STAY AND ABEYANCE;**

**(2)  DENYING MOTION FOR RELIEF FROM JUDGMENT; and**

**(3)  DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Robert Chavira (hereinafter "Petitioner") is a state prisoner proceeding pro se and *in forma pauperis* with a Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.[1]  (ECF No. 1.)  Petitioner was convicted in the San Diego County Superior Court of one count of conspiracy to commit robbery, eleven counts of robbery, nine counts of false imprisonment, one count of burglary, one count of arson, and two counts of assault with a semi-automatic firearm, with nineteen counts accompanied by firearm use findings.

---

[1]  Although this case was randomly referred to United States Magistrate Judge Bernard G. Skomal pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter.  See S.D. Cal. Civ.L.R. 71.1(d).

(Lodgment No. 1, Clerk's Tr. ["CT"] at 364-88.)  He is serving a sentence of 717 years-to-life in state prison, enhanced under California's Three Strikes law by two prior felony convictions.  (CT 758-59; Lodgment No. 5, <u>People v. Chavira, et al.</u>, No. D063089, slip op. at 22 (Cal. App. Ct. Mar. 26, 2014).)  Petitioner claims that his federal constitutional rights were violated by ineffective assistance of appellate counsel (claims one through seven, nine and ten), by the imposition of procedural bars in his state habeas proceedings (claims eight and eleven), because there is insufficient evidence to support three of the false imprisonment counts (claim twelve), and because the burden of proof was lowered when the jury was given a permissive inference instruction on robbery and burglary (claim thirteen).  (ECF No. 1 at 21-198.)

Respondent has filed an Answer and lodged the state court record.  (ECF Nos. 13-14, 21.)  Respondent argues that claims nine and ten were never presented to any state court but can be denied as plainly meritless, claims eight and eleven do not present claims for relief, and the adjudication by the state court of the remaining claims is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  (Memorandum of Points and Authorities in Support of Answer ["Ans. Mem."] at 4-13.)

Petitioner has filed a Traverse.  (ECF No. 16.)  He has also filed a Motion for Stay and Abeyance requesting this matter be stayed and the Petition held in abeyance until the state court issues an opinion on a habeas petition in which he raised claims nine and ten. (ECF No. 18.)  In addition, he has filed a Motion for Relief from Judgment in which he states that the state court has now denied the habeas petition presenting claims nine and ten, that his motion for stay and abeyance is therefore moot, and requesting claims nine and ten be considered on their merits.  (ECF No. 20.)

The Court finds that federal habeas relief is unavailable as to any claim presented in the Petition because claims nine and ten fail under a de novo review, and the remaining claims fail under the deferential standard of review set forth in 28 U.S.C. § 2254(d).  The Court denies Petitioner's motions as moot, and denies the Petition.

# I.    PROCEDURAL BACKGROUND

In a 28-count Consolidated Amended Information/Indictment filed in the San Diego County Superior Court on October 2, 2012, Petitioner and co-defendant Ryan McKnight were charged with one count of conspiracy to commit robbery in violation of California Penal Code § 182(a)(1) (count 1), eleven counts of robbery in violation of California Penal Code § 211 (counts 2, 3, 8-11, 13, 15, 25-27), two counts of assault with a deadly weapon in violation of California Penal Code § 245(a)(1) (counts 4-5), nine counts of false imprisonment by violence in violation of California Penal Code §§ 236-37 (counts 6-7, 15-21), one count of arson in violation of California Penal Code § 451(c) (count 22), two counts of assault with a semi-automatic firearm in violation of California Penal Code § 246(b) (counts 23-24), one count of burglary in violation of California Penal Code § 459 (count 12), and Petitioner alone was charged with one count of receiving stolen property in violation of California Penal Code § 496(a) (count 28). (CT 195-207.)  Counts 4, 5, and 28 were later dismissed.  (Id.)  As to counts 2-3, 8-11, 13-14 and 25-27, it was alleged that Petitioner and McKnight personally used a firearm within the meaning of California Penal Code § 12022.53(b), and as to counts 6-7 and 15-21, that they personally used a firearm within the meaning of California Penal Code § 12022.5(a).  (CT 200-09.)  It was also alleged that Petitioner had been convicted of two prior serious or violent felonies within the meaning of California Penal Code §§ 667(a)-(i) and 1170.12.  (CT 195-209.)

On October 31, 2012, a jury found Petitioner guilty on all counts, other than count 5 on which they deadlocked, and counts 4 and 28 which were dismissed prior to submission to the jury, and returned true findings on all the firearm use allegations other than count 11.  (CT 364-89.)  The prior conviction allegations were found true on November 1, 2012. (CT 754.01.)  On December 3, 2012, Petitioner was sentenced to 425 years-to-life plus 288 years and 8 months in state prison.  (CT 758-59.)

Petitioner appealed, raising claims twelve and thirteen presented here, and joined McKnight's appeal raising claims not presented here.  (Lodgment No. 3.)  The appellate court consolidated the appeals, corrected a sentencing error which increased Petitioner's

sentence by 3 years and 4 months, and affirmed. (Lodgment No. 5, <u>People v. Chavira, et al.</u>, No. D063089, slip op. at 22.) On April 29, 2014, Petitioner filed a petition for review in the state supreme court raising claims twelve and thirteen. (Lodgment No. 6.) The petition was denied with an order which stated: "Petition for review denied." (Lodgment No. 7, <u>People v. Chavira</u>, No. S218220 (Cal. June 11, 2014).)

On October 31, 2014, Petitioner filed a habeas petition in the state superior court claiming: (1) his cell phones were searched without a valid warrant; (2) the search exceeded the scope of any warrant; (3) ineffective assistance of trial counsel in failing to investigate and object to perjured testimony by a police detective and a prosecution investigator; (4) his conviction was based on that perjured testimony; (5) prosecutorial misconduct when the prosecutor took on investigatory functions; and (6) ineffective assistance of appellate counsel for failing to raise those and other claims on appeal. (Lodgment No. 8.) On December 9, 2014, the state superior court denied the habeas petition, finding that the first five claims were procedurally barred because they could have been but were not raised on direct appeal, and that the ineffective assistance of appellate counsel claim (claims one through seven presented here) failed on the merits because Petitioner had not shown prejudice as a result of the alleged errors of his appellate counsel. (Lodgment No. 9, <u>In re Chavira</u>, No. HC20860, order at 2-4 (Cal. Sup. Ct. Dec. 9, 2014).)

On December 22, 2014, Petitioner filed a petition for a writ of error *coram nobis* in the state appellate court alleging that a police detective and prosecution investigator testified falsely at trial. (Lodgment No. 10.) The appellate court summarily denied the petition without a statement of reasoning. (Lodgment No. 11, <u>In re Chavira</u>, No. D067233, order (Cal. App. Ct. Jan. 8, 2015).) On January 21, 2015, Petitioner filed a habeas petition in the appellate court raising the same claims presented in his superior court habeas petition (which included claims one through seven here), and adding claims that the state superior court erroneously denied most of his claims on procedural grounds (claims eight and eleven here). (Lodgment No. 12.) The appellate court denied the petition on the basis that the claims alleging unlawful search and seizure were procedurally barred for failing to raise

them on appeal, his claim of perjury was barred as repetitive and successive as it had already been denied in his *coram nobis* proceeding, and the claim the superior court abused its discretion in finding his claims procedurally barred was not cognizable in an appellate court habeas proceeding. (Lodgment No. 13, In re Chavira, No. D067302, order at 1-2 (Cal. App. Ct. Jan. 22, 2015).) The court alternately found that to the extent any claim was not procedurally barred, it failed on the merits, as the claim of perjury was based on minor conflicts in testimony insufficient to demonstrate falsity and so insignificant as to fail to support a reasonable probability the trial was affected, and: "The evidence of Chavira's guilt introduced at trial was so strong, and the conclusory and factually unsupported claims of prosecutorial misconduct and ineffective assistance of counsel raised by Chavira are so weak, that he has not shown 'a probability sufficient to undermine confidence in the outcome.'" (Id., quoting Strickland v. Washington, 466 U.S. 668, 694 (1984).)

On March 5, 2015, Petitioner filed a second habeas petition in the state superior court seeking an evidentiary hearing on his claim that his trial counsel failed to seek suppression of the cell phone evidence. (Lodgment No. 14.) On April 7, 2015, the state superior court denied the petition on the same basis it denied the claim in the first superior court habeas petition, because it could have been but was not raised on appeal. (Lodgment No. 15, In re Chavira, No. HC20860, order at 3 (Cal. Sup. Ct. April 7, 2015).)

On March 26, 2016, Petitioner filed a habeas petition in the state supreme court in which he raised the same claims presented in the superior and appellate courts, including claims one through eight and eleven here. (Lodgment No. 16.) That petition was denied on July 22, 2015, with an order which stated: "Petition for writ of habeas corpus denied." (Lodgment No. 17, In re Chavira, No. S225372, order (Cal. July 22, 2015).)

After the Answer was filed, in which Respondent correctly observed that claims nine and ten had not been presented to any state court, Petitioner filed a habeas petition in the state supreme court presenting those claims. (ECF No. 18 at 8-122.) The state supreme court denied that petition in an order which stated: "The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780 (courts will not entertain habeas

corpus claims that are untimely); *In re Clark* (1993) 5 Cal.4th 750, 767-769 (courts will not entertain habeas corpus claims that are successive).)" (ECF No. 20 at 57, In re Chavira, No. S237668, order at 1 (Cal. July 19, 2017).)

## II.    **TRIAL PROCEEDINGS**

This summary of the evidence is taken from the appellate court opinion affirming Petitioner's conviction on direct review.  See Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (state court findings of fact are presumed correct in federal habeas proceedings).

This case arises out of defendants' four-month crime spree in late 2011. Because the details of all the crimes are not relevant to the issues raised on appeal, we here describe the crimes and the related investigations only briefly. We provide additional details in the Discussion section as needed to resolve particular claims of error.

### A.    *The Jewelry Store Robberies*

Robberies occurred at the following four jewelry stores in California on the dates indicated: The Watch Connection in Costa Mesa (Aug. 2, 2011); Ben Bridge Jeweler, Inc. in San Diego (Sept. 16, 2011); Ben Bridge Jeweler, Inc. in San Jose (Oct. 15, 2011); and Leeds & Son in Palm Desert (Oct. 26, 2011). At each location, the robbers used the same modus operandi: They stole a Honda Accord from the vicinity, drove to the jewelry store, entered the store during business hours wearing ski masks and gloves and carrying firearms, ordered the employees and customers to get on the floor, smashed display cases with sledgehammers, stole expensive watches and other jewelry, and then fled in and later abandoned the stolen Honda.

Forensic and video surveillance evidence linked defendants to these robberies.  A ski mask containing DNA that matched Chavira's profile was found on the ground near the Honda abandoned after the robbery at The Watch Connection.  Blood left at the San Diego Ben Bridge store and in the Honda abandoned after the robbery of that store contained DNA that matched McKnight's profile.  At the San Jose Ben Bridge store, a video recorder captured the robbery, and one of the robbers had tattoos that matched McKnight's.  Blood found at that store on broken glass and on a sledgehammer the robbers left behind contained DNA matching McKnight's profile. A sledgehammer left behind after the robbery at Leeds & Son also contained DNA matching McKnight's profile, and DNA matching Chavira's profile and McKnight's fingerprints were found in the Honda abandoned after the robbery.

6

B.  *The Turner's Outdoorsman Store Burglary*

Around midnight on October 24, 2011, a Turner's Outdoorsman store in San Diego was burglarized. The metal gate across the glass emergency exit door was pulled off by a chain, and the door was shattered. Video surveillance showed the burglar using a sledgehammer in an attempt to smash open a handgun display case. When the attempt proved unsuccessful, the suspect stuffed seven semiautomatic rifles into a bag and exited the store. The store manager testified two of the stolen rifles looked "very similar" to rifles depicted in video surveillance of the robbery at Leeds & Son. Shortly after the break-in at Turner's Outdoorsman, police found a stolen Honda Accord abandoned in the alley behind the store.

C.  *The Barona Casino Robbery and Associated Arson*

At 2:00 a.m. on November 9, 2011, a house under construction on an Indian reservation near the Barona Casino in Lakeside caught fire and eventually burned to the ground. Investigators found a nozzle from a gasoline can at the site and determined the fire had been deliberately set using gasoline as an accelerant.

While the fire was blazing, a Ford Explorer drove up to and parked at the entrance of the Barona Casino. Four men wearing ski masks and bulletproof vests exited the vehicle. The driver kept a rifle trained on casino employees outside the casino and ordered them to get on the ground, while the three other men hauled a chain from the back of the Explorer into the casino. After they entered the casino, one of the masked men fired a gun into the air and told everyone to get on the ground. The men then tried to wrap the chain around a display case advertising a $250,000 cash giveaway and containing stacks of cash. When they discovered the chain was too short, they knocked the display case over, smashed it open, stuffed stacks of cash into a bag, and fled in the Explorer.

Shortly after the robbers left the Casino, a patrol officer found the Ford Explorer abandoned near the casino. In a duffel bag inside the vehicle, an investigator found a box of .22 caliber bullets. Chavira's fingerprints were found on the box. The bullets were of the same caliber as that of a shell casing found on the floor of the casino near the smashed display case.

D.  *Arrest of Defendants and Subsequent Searches*

Police stopped defendants as they were traveling in Chavira's car and arrested them on November 9, 2011. Police searched the vehicle and found a

7

black ski mask and several mobile telephones inside the vehicle. One of the telephones contained text messages written in Spanish that concerned the sale of watches and were dated between October 15 and 26, 2011. Tracking data on the telephones placed defendants in the vicinity of the San Jose Ben Bridge store and the Leeds & Son store on the dates those stores were robbed.

Police searched the motel room in which defendants were staying on the date of the Barona Casino robbery. They found bulletproof vests, ski masks, gloves, and two semiautomatic handguns. One of the handguns was "distinctive" and "appeared to match up perfectly" with a handgun depicted in video surveillance of the robberies at the two Ben Bridge stores and the Barona Casino. Police also found a pair of sneakers that contained gasoline residue and DNA matching McKnight's profile. A Walmart receipt found on a nightstand recorded a purchase of two gasoline cans and a lighter on November 8, 2011. Video surveillance from the Walmart showed McKnight buying those items. The gasoline cans had nozzles that matched the one found during the investigation of the fire that destroyed the house under construction near the Barona Casino.

Police also searched two apartments leased by Chavira. In one, police found diamonds stolen in the robbery of Leeds & Son. In the other, police found four of the rifles stolen during the burglary of the Turner's Outdoorsman store and numerous watches and other pieces of jewelry stolen in the robberies at the Ben Bridge stores and at Leeds & Son.

E. *McKnight's Trial Testimony*

McKnight testified at trial. He admitted committing the robberies at the four jewelry stores and the burglary at the Turner's Outdoorsman, as well as stealing the Hondas used in those crimes. McKnight also admitted he robbed the Barona Casino and started the fire at the nearby house to create a distraction for the tribal police. According to McKnight, Chavira was "innocent" and did not participate in any of the crimes.

(Lodgment No. 5, <u>People v. Chavira, et al.</u>, No. D063089, slip op. at 2-6.)

## III. **DISCUSSION**

Petitioner claims his federal constitutional rights were violated because he received ineffective assistance of counsel when his appellate counsel failed to raise the following claims on appeal: (a) claims alleging the digital contents of his cell phones were illegally obtained and improperly introduced at trial because the phones were searched incident to

his arrest without a warrant (claim one), and were obtained in excess of the warrants issued to their service providers (claim two); (b) claims alleging ineffective assistance of trial counsel in failing to move to suppress the evidence obtained from the cell phones (claim three), failing to challenge the cell phone search warrant and cell phone provider subpoenas (claim four), failing to conduct any investigation, interview any witnesses, object to the admission of perjured testimony and irrelevant evidence, and seek suppression of a pre-trial photographic lineup identification (claim five), and failing to move for a mistrial on the basis of perjured testimony (claim six); (c) a claim alleging numerous instances of prosecutorial misconduct (claim seven); (d) a claim alleging that one of his prior strike convictions is invalid and should not have been used to enhance his sentence (claim nine); and (e) a claim alleging an error in the reasonable doubt jury instruction (claim ten). (ECF No. 1 at 23-118, 132-55.) He also claims that the state court erred in finding many of his claims procedurally barred (claim eight), and that he can show cause and prejudice to overcome those bars (claim eleven). (Id. at 119-31, 156-63.) Finally, he claims there is insufficient evidence to support three of the nine counts of false imprisonment (claim twelve), and that the burden of proof was lowered when the jury was instructed they could find him guilty of robbery and burglary if they find he knowingly possessed recently stolen property coupled with even slight supporting evidence of robbery and burglary (claim thirteen). (Id. at 164-98.)

Respondent answers that the state court adjudication of claims one through seven, which were denied on state habeas on the basis Petitioner did not show Strickland prejudice arising from appellate counsel's failure to raise the underlying claims on appeal, and claims twelve and thirteen, which were denied on direct appeal in a reasoned opinion, is objectively reasonable within the meaning of 28 U.S.C. § 2254(d). (Ans. Mem. at 5-13.) Respondent contends that claims eight and eleven do not present grounds for relief, and claims nine and ten are unexhausted because they have not been presented to the state court, but can be denied notwithstanding Petitioner's failure to exhaust because they are clearly without merit. (Id. at 7-9.)

Petitioner replies by requesting his Petition also serve as a Traverse. (Traverse at 1.) On June 7, 2017, after the Answer was filed, and apparently in response to Respondent's contention that claims nine and ten had never been presented to any state court, Petitioner filed a Motion for Stay and Abeyance indicating that he had recently presented claims nine and ten to the state supreme court in a habeas petition. (ECF No. 18.) On August 9, 2017, Petitioner filed a Motion for Relief from Judgment indicating the habeas petition raising claims nine and ten had been denied, that his stay motion is therefore moot, and requesting he be allowed to proceed with those claims in this action. (ECF No. 20.)

### A. Motion for Stay and Abeyance

Petitioner requested this action be stayed and the Petition held in abeyance while he awaited the decision of the state supreme court on the then-pending habeas petition in that court raising claims nine and ten. (ECF No. 18.) Petitioner now indicates his motion is moot because the state supreme court has since denied that habeas petition. (ECF No. 20.) Claims nine and ten are included in the Petition, but had not been presented to the state court when the Petition was filed. In fact, those claims were not presented to the state court until after the Answer was filed, and were denied by the state court as untimely and successive. (Id. at 57, In re Chavira, No. S237668, order at 1.) Although the timing and manner in which claims nine and ten were presented to and adjudicated by the state court presents issues of timeliness and procedural default which Respondent has not had the opportunity to address, it is clear that the motion for a stay and abeyance is moot. The Court therefore denies the motion as moot.

### B. Motion for Relief from Judgment

In his Motion for Relief from Judgment, Petitioner requests permission to proceed with claims nine and ten irrespective of his failure to exhaust state court remedies at the time he filed his Petition. (ECF No. 20.) A Motion for Relief from Judgment is not available at this time because no judgment has been entered in this case. Rather, claims nine and ten are included in the Petition, and there has yet to be any judgment entered with respect to those claims. Although Respondent has not had the opportunity to raise any

procedural defenses arising from the manner in which Petitioner presented claims nine and ten to the state court and the manner in which the state court adjudicated them, Respondent has indicated in the Answer that these claims can be denied as meritless irrespective of the procedural infirmity arising from Petitioner's failure to timely exhaust state court remedies. (Ans. Mem. at 7-9.) As set forth below, the Court agrees, and in the exercise of judicial economy will deny claims nine and ten irrespective of any procedural infirmity because they fail on the merits under a de novo review. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (holding that irrespective of whether AEDPA deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("[I]t may well make sense in some instances to proceed to the merits [rather than address procedural bars] if the result will be the same."). Thus, there is no need to provide Respondent further briefing on the issue of procedural defenses, and no need to grant Petitioner relief from judgment. Accordingly, the Court denies the Motion for Relief from Judgment.

### C.     Merits

In order to obtain federal habeas relief with respect to a claim adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006). Even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

from [the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." <u>White v. Woodall</u>, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014), quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011). In order to satisfy § 2254(d)(2), the petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### 1.     Claims One through Seven

Petitioner alleges in claims one through seven that that his federal constitutional rights were violated because he received ineffective assistance of appellate counsel in numerous respects. In claims one and two he alleges his appellate counsel failed to present a claim on appeal challenging the search and seizure of his cell phones. (EFC No. 1 at 27-40.) In claims three though six he alleges appellate counsel should have raised claims on appeal alleging ineffective assistance of trial counsel in failing to: (a) move to suppress the evidence obtained from the cell phones (claim three); (b) challenge the subpoenas issued to the cell phone service providers (claim four); (c) investigate, interview witnesses, seek suppression of a suggestive pre-trial photographic lineup, and object to the admission of irrelevant evidence and perjured testimony (claim five); and (d) move for a mistrial based on perjured police testimony (claim six). (<u>Id.</u> at 41-88.) In claim seven he alleges appellate counsel failed to conduct a meaningful investigation and failed to raise a claim alleging numerous instances of prosecutorial misconduct (claim seven). (<u>Id.</u> at 89-118.)

Respondent answers that the state court denial of these claims, on the basis there is no <u>Strickland</u> prejudice, is neither contrary to, nor involves an unreasonable application of, clearly established federal law. (Ans. Mem. at 5-7.)

The clearly established United States Supreme Court law governing ineffective assistance of trial and appellate counsel claims is set forth in <u>Strickland</u>.  <u>Turner v. Calderon</u>, 281 F.3d 851, 872 (9th Cir. 2002).  For ineffective assistance of counsel to provide for habeas relief, Petitioner must show that counsel's performance was deficient.  <u>Strickland</u>, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u>  He must also show that counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."  <u>Id.</u>  To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>  Petitioner must establish both deficient performance and prejudice in order to establish ineffective assistance of counsel.  <u>Id.</u> at 687.

"Surmounting <u>Strickland</u>'s high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).  "The standards created by <u>Strickland</u> and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so."  <u>Richter</u>, 562 U.S. at 105.  These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011).

Appellate counsel has no constitutional obligation to raise every nonfrivolous issue on appeal.  "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989); <u>see also</u> <u>Baumann v. United States</u>, 692 F.2d 565, 572 (9th Cir. 1982) (stating that an attorney's failure to raise a meritless legal argument does not constitute ineffective assistance); <u>Gustave v. United States</u>, 627 F.2d 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are clearly untenable.")

Petitioner presented claims one through seven to the state superior, appellate and supreme courts in a sequence of habeas petitions, which also included the underlying claims he alleges appellate counsel was deficient in failing to raise. (Lodgment Nos. 8, 12, 16.) The superior court first found that the underlying claims of illegal search and seizure, perjury, and prosecutorial misconduct were procedurally barred because they could have been but were not raised on appeal. (Lodgment No. 9, In re Chavira, No. HC20860, order at 2-3.) After acknowledging that Strickland sets forth the proper standard for ineffective assistance of counsel claims, the superior court then addressed the merits of the claim that appellate counsel was ineffective in failing to raise those issues on appeal, stating:

> Here, Petitioner has not met his burden to show he was prejudiced by his purported ineffective counsel on appeal. Petitioner argues his appellate counsel failed to investigate the case thoroughly and failed to raise all applicable constitutional issues in the appeal. However, Petitioner has failed to show prejudice as a result of any of these perceived inadequacies on the part of counsel.

(Lodgment No. 9, In re Chavira, No. HC20860, order at 4.)

The state appellate court, after finding that "most" of the claims raised on habeas were procedurally barred, stated:

> To the extent any of Chavira's claims are not procedurally barred, they fail on the merits. His claims asserting illegal police searches of his cell phones are not cognizable in a habeas corpus proceeding. (In re Reno, supra, 55 Ca.4th at p. 507; In re Terry (1971) 4 Cal.3d 911, 926.) The claims based on false testimony, though cognizable in a habeas corpus proceeding (Pen. Code, § 1473, subd. (b)(1)), fail because the conflicts in the trial testimony Chavira identifies are insufficient by themselves to establish the law enforcement officers testified falsely. (In re Roberts (2003) 29 Cal.4th 726, 742-743.) Moreover, even if their testimony was false, Chavira has not established it was so significant that there is a reasonable probability it could have affected the outcome of his trial. (In re Cox (2001) 30 Cal.4th 974, 1008.) The evidence of Chavira's guilt, as summarized in the opinion on direct appeal, was overwhelming. The few conflicts in the testimony he identifies concern minor points and do not undermine this court's confidence in the outcome of the trial. (Id. at p. 1009.) For similar reasons, Chavira's claims of prosecutorial misconduct and ineffective assistance of counsel also

fail. A petitioner is not entitled to relief on those grounds unless he shows there is a reasonable probability that but for the misconduct or the incompetence he would have obtained a better result. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Crew* (2003) 31 Cal.4th 822, 839; *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) The evidence of Chavira's guilt introduced at trial was so strong, and the conclusory and factually unsupported claims of prosecutorial misconduct and ineffective assistance of counsel raised by Chavira are so weak, that he has not shown "a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

(Lodgment No. 13, <u>In re Chavira</u>, No. D067302, order at 2.)

Finally, the state supreme court denied the claims in an order which stated: "Petition for writ of habeas corpus denied." (Lodgment No. 17, <u>In re Chavira</u>, No. S225372, order at 1.)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06 (1991). That presumption has not been rebutted here, and the Court will therefore look through the silent denial of claims one through seven by the state supreme court to the last reasoned state court opinion addressing the claims, the appellate court order, which, as quoted above, found that Petitioner had not satisfied the prejudice prong of <u>Strickland</u>.

Thus, in order to be entitled to habeas relief in this Court, Petitioner must show that the state appellate court determination that he had failed to show <u>Strickland</u> prejudice is objectively unreasonable. <u>Richter</u>, 562 U.S. at 105. Even if he can make such a showing, he must also satisfy the <u>Strickland</u> performance prong. <u>Strickland</u>, 466 U.S. at 687 (both deficient performance and prejudice must be established in order to establish ineffective assistance of counsel); <u>Fry</u>, 551 U.S. at 119-22 (holding that even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief). Because the state court denied these claims on the basis of Petitioner's failure to satisfy the <u>Strickland</u> prejudice prong without addressing the performance prong, to the extent the performance prong is addressed in this Court, a de novo review is required. <u>See Wiggins</u>

v. Smith, 539 U.S. 510, 534 (2003) (reviewing de novo the question whether petitioner suffered Strickland prejudice where the state court adjudication of the claim was predicated only on the Strickland deficient performance prong).

Petitioner argues in claim one that he received ineffective assistance of counsel because his appellate counsel failed to challenge the search of his cell phones under Riley v. California, 573 U.S. ___, 134 S. Ct. 2473 (2014) (holding that the search incident to arrest exception to the warrant requirement does not apply to a search of the digital information in a cell phone, and a warrant is generally required for such a search). (ECF No. 1 at 25-32.) He alleges in claim two that his appellate counsel was deficient in failing to raise a Fourth Amendment challenge to the search of his cell phones on the basis they were searched without a valid warrant, or their contents were searched in excess of the court order directing their service providers to produce information. (Id. at 33-40.)

Petitioner contends that Detective Dawn Wolf of the San Diego Police Department and Detective Brian Meeker of the San Jose Police Department searched his cell phones and seized photographs, text messages and contact lists from them without a valid warrant. (ECF No. 1 at 25.) Detective Wolf testified that Petitioner and his co-defendant McKnight were arrested in Petitioner's vehicle during a traffic stop shortly after they left room 205 of the Marina Inn on Pacific Highway. (Lodgment No. 2, Reporter's Tr. ["RT"] at 491-92.) Detective Wolf searched the motel room and found items she believed were related to the robberies, including a ballistic vest, two black ski masks each paired with a pair of batting gloves, a red ski mask paired with a pair of batting gloves, a cell phone, two .22 caliber Ruber Mark II semiautomatic handguns, one of which appeared on the surveillance videos from three of the robberies, 138 one dollar bills, and a receipt for the purchase of two five-gallon gasoline cans. (RT 493-504.) The loss report from the Barona Casino robbery included a large number of one dollar bills, and the casino was robbed shortly after a nearby fire was started with gasoline. (RT 499.) Prior to the search of the motel room, Detective Wolf searched Petitioner's vehicle, which he was driving when he and McKnight were arrested, and recovered a black ski mask, a large number of one dollar bills, a key to

a white Nissan which had been used in the Barona Casino robbery, and five cell phones, four in the center console and one in McKnight's lap. (RT 518-28.) Two of the cell phones from the vehicle with the last four digits 5508 and 0276 belonged to Petitioner; two of the cell phones belonged to McKnight, the one found in his lap in the vehicle with the last four digits 7907, and the one found in the motel room with the last four digits 6957; and one with the last four digits 2473 was registered to David Cilavida, who was never located. (RT 524, 534-39, 965-66, 2072-74.) Detective Wolf testified that she wrote warrants as to four of the phones found in the car to their service providers, and a warrant for McKnight's phones was prepared by the San Jose Police Department. (RT 538-40.) Detective Brian Meeker of the San Jose Police Department testified that he obtained cell phone records from the service providers of the 7907 and 6957 phones belonging to McKnight, pursuant to a search warrant he wrote. (RT 965-66, 1028-29.)

Detective Wolf testified that she and other San Diego Police officers manually searched the phones, and connected them to a machine with a Cellebrite program which allowed her to retrieve data, including contact information and text messages. (RT 538-39, 2015-16.) In a search of McKnight's 7907 phone, they found a photograph taken five hours after the Leeds & Son robbery of a diamond ring stolen in that robbery. (RT 2016-17.) Petitioner's 5508 phone and McKnight's 7907 phones exchanged numerous text messages from April 18 through November 9, 2011, during the time frame of the robberies. (RT 2049-52.) Text messages on the 2473 phone appeared to have been exchanged between Petitioner and a person named Mark discussing the sale of and the need to "move" watches. (RT 2061-64, 2082-85.) The prosecutor later argued to the jury that the text messages between Petitioner and McKnight showed they were very close friends and that Petitioner was in charge when they planned the Barona Casino robbery, and the text messages on the 2473 phone showed Petitioner was trying to sell watches stolen in the robberies. (RT 2501-04, 2526-33, 2549-50.) Petitioner's defense counsel, on the other hand, argued the text messages implicated McKnight only, and showed that Petitioner was not involved in the robberies. (RT 2617-19.) Cell phone tracking data, obtained from the

service providers pursuant to a subpoena, placed Petitioner and McKnight at or near the scene of several robberies and where the cars were stolen for the robberies. (RT 705-25, 1549-56, 2116-21, 2514-15, 2520-21.) Defense counsel argued there was no evidence Petitioner was in possession of his phone at those times, given that he often lent out his phone and there were five phones found in his car when he was arrested. (RT 2619-21.)

Petitioner's trial counsel filed a pretrial motion to suppress all evidence obtained from his vehicle and motel room on the basis they were seized without a warrant, which the prosecutor opposed on the ground that Petitioner was a parolee without a reasonable expectation of privacy in his vehicle or motel room. (CT 139-54.) During trial, Petitioner's trial counsel moved to suppress the text messages from the 2437 phone discussing the need to "move" watches, arguing a lack of foundation as they were found on a phone which was not registered to Petitioner. (RT 2022-23.) Both motions were denied. (RT 21, 2025.)

Petitioner claims that although the detectives obtained search warrants for records from the cell phone providers, such as subscriber and tracking data, they did not obtain warrants for a search of the digital contents of the phones themselves, such as text messages, contact lists and photographs stored on the phone. (ECF No. 1 at 27-30.) Although Petitioner states that he does not have a copy of the warrants, he attaches a portion of Detective Meeker's affidavit requesting a court order directing McKnight's cell phone provider to release information, and contends a similar affidavit must have been written by Detective Wolf on his phones. (Id. at 202-03.) Detective Meeker's complete affidavit and accompanying court order are in the record. (CT 189-93.)

Petitioner argues that the search of his cell phones exceeded the warrants under Riley v. California, which was decided two weeks after the California Supreme Court denied his petition for review, and which recognized that the search incident to arrest exception to the warrant requirement generally does not apply to a search of the digital information in a cell phone. (ECF No. 1 at 25, 31.) He alleges in claims one and two that because there is no evidence in the record the detectives obtained warrants to search the contents of his phones, his appellate counsel was ineffective in failing to raise a Fourth Amendment claim

challenging those searches.  He claims he was prejudiced by that failure because "at least two jurors stated that if not for the cell phone evidence, they would have acquitted [Petitioner] on all charges according to defense counsel Armstrong," and that they "would have acquitted Petitioner were it not for the text messages." (Id. at 37, 67.)

Petitioner attaches to the Petition a letter from his appellate counsel dated July 14, 2014, about one month after the California Supreme Court denied his petition for review on direct appeal on June 11, 2014, in which appellate counsel stated:

> In regard to the cases that you mentioned in your recent letter, Riley v. California and U.S. v. Wurie [which were consolidated in the Supreme Court in Riley v. California decided on June 25, 2014], which dealt with the use of evidence obtained from a warrantless search of cell phones, I have read those cases and, in the context of the facts in your case, I am afraid those new cases are not that helpful to you.  The most damaging cell phone evidence in your case were call records obtained from the cell phone providers pursuant to subpoenas duces tecum issued by the trial court.  The records were properly obtained through the subpoena process and are not subject to the warrant requirement established by the Riley and Wurie cases.  Those records established that your co-defendant and you were in telephone contact during the crucial time periods and that you were in close physical proximity to the particular crime scenes near the time of the robberies.  In Riley and Wurie, the cell phone evidence consisted of inculpatory photos, messages, and videos obtained directly from the cell phones by the police, without warrant or subpoena.  The only evidence obtained directly from your cell phone were some text messages related to the possible sale of some watches.  It is my opinion that although the text messages were somewhat damaging to your defense, it is unlikely that suppression of the evidence would have resulted in a more favorable verdict, particularly in light of the evidence against you.

(Id. at 205-06.)

In light of the opinion of Petitioner's appellate counsel, which, as discussed below in the prejudice section is well supported by the record, and in light of the fact that trial counsel tried and failed to suppress the evidence obtained from Petitioner's cell phones on the grounds they were seized without a warrant, even if Petitioner could support his allegation that the search of his cell phone was conducted without a warrant or exceeded the subpoenas issued to the service providers, he has failed to overcome the strong

presumption that his appellate counsel made a reasonable tactical decision not to raise a claim challenging the search of the phones. See Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (recognizing a strong presumption that counsel took actions "for tactical reasons rather than through sheer neglect"), citing Strickland, 466 U.S. at 690 (holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment); Burt v. Titlow, 571 U.S. ___, 134 S. Ct. 10, 17 (2013) ("[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.") (internal quotations and citations omitted); Miller, 882 F.2d at 1434 ("In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.") Based on a de novo review, Petitioner has failed to establish deficient performance by his appellate counsel with respect to claims one and two.

Even assuming Petitioner could show that his phones were searched without a valid warrant, and that his appellate counsel erred in failing to challenge the searches, habeas relief is unavailable because it is clear that Petitioner has failed to establish that the state court adjudication of the Strickland prejudice prong is objectively unreasonable. Although Petitioner alleges in his verified Petition that his trial counsel said that at least two jurors told trial counsel they would have acquitted Petitioner but for the text messages obtained from his cell phones, he provides no support for that self-serving declaration, which in any case would not support a challenge to the jury verdict in this Court. See Warger v. Shauers, 574 U.S. ___, 135 S. Ct. 521, 527 (2014) (holding that statements by a juror, with exceptions only for extraneous information, outside influence, and mistakes in entering the verdict, are precluded from consideration in a hearing into the validity of a verdict); Clark v. United States, 289 U.S. 1, 18 (1933) ("[T]he testimony of a juror is not admissible for the impeachment of his verdict.")

Rather, as the state court correctly observed: "The evidence of Chavira's guilt introduced at trial was so strong, and the conclusory and factually unsupported claims of

prosecutorial misconduct and ineffective assistance of counsel raised by Chavira are so weak, that he has not shown 'a probability sufficient to undermine confidence in the outcome.'" (Lodgment No. 13, In re Chavira, No. D067302, order at 2, quoting Strickland, 466 U.S. at 694 (prejudice requires a reasonable probability that the result of the proceeding would have been different absent the error, that is, "a probability sufficient to undermine confidence in the outcome.")) For the following reasons, it is clear that the determination by the state court in that regard is objectively reasonable.

Petitioner was arrested during a traffic stop driving his car, and inside the car was a black ski mask similar to the ones used in the robberies and a large number of one dollar bills (RT 519, 1913-14), as well as the keys to a Nissan Maxima parked two blocks from Petitioner's residence which had been used in the Barona Casino robbery (RT 525-28), and the ignition cylinder of the stolen Honda used in the Leeds & Son robbery (RT 1523-33, 1921-22). The loss report from the Barona Casino robbery included a large number of one dollar bills. (RT 499.) The search of Petitioner's motel room revealed two semiautomatic handguns, one of which was distinctive and appeared from surveillance videos to have been used in the robberies, along with black ski masks and gloves of the type used in the robberies (RT 494-97), 138 one dollar bills (RT 499), and a receipt for a lighter and two five-gallon gas cans (RT 502-03). A search of two apartments leased to Petitioner revealed a $60,000 diamond stolen in the Leeds & Son robbery, as well as diamond chips (RT 1939-44), four of the rifles stolen in the Turner's Outdoorsman robbery with the price tags still on them (RT 1108-11, 1948-49, 1957-58, 2049), 137 Rolex watches and 20 Tissot watches (RT 1659-61), and assorted jewelry, some of which was stolen in the Leeds & Son robbery (RT 1962). Numerous Rolex and Tissot watches were stolen in the Leeds & Son and Ben Bridge robberies. (RT 294, 304-05, 935-37, 1397-98.)

In addition to the evidence Petitioner was in possession of spoils from the crimes and equipment used to commit them, forensic evidence connected him to the crimes. His DNA was on the ski mask found on the ground just in front of the stolen Honda used in the Watch Connection robbery (RT 151-52, 176-91), on the steering wheel of the Honda used

15cv1997-WQH (BGS)

in the Leeds & Son robbery (RT 1309-16, 1600-14, 2594-96), and on the ski masks and gloves recovered from his motel room following the Barona Casino robbery (RT 560-68). Petitioner's fingerprint was found on an ammunition box in the Ford Explorer used in the Barona Casino robbery, which contained the same caliber ammunition found on the floor after the robbery (RT 1685-89, 1704-13, 2125), and gunshot residue was found on his hand when he was arrested (RT 833-34).

In light of the strong evidence of Petitioner's involvement in the crimes, it is clear that the evidence obtained from a search of the phones, which consisted of a photograph of a ring from McKnight's phone, text messages between Petitioner and McKnight showing they were in communication with each other during the several months the robberies took place, and text messages from Petitioner to an unknown individual indicating a need to move watches, even if improperly admitted, was not of the quality to show "a probability sufficient to undermine confidence in the outcome" of his trial. Strickland, 466 U.S. at 694. Although the evidence that he and McKnight were in telephonic contact during the time period of the robberies tended to undermine McKnight's trial testimony that Petitioner was not involved in the crimes, it was overshadowed by evidence that Petitioner and McKnight were arrested together in a vehicle containing evidence of the robberies after leaving a motel room together also containing evidence of the robberies. And although the text messages stating Petitioner needed to "move" watches was certainly incriminating, it too was overshadowed by the more than 150 expensive stolen watches recovered from his apartment. In light of that evidence, as well as the forensic evidence and evidence of other stolen property found in Petitioner's apartment, it was objectively reasonable for the state court to find that Petitioner had failed to show a reasonable probability of a more favorable outcome had his appellate counsel raised a claim challenging the search of his cell phones. Strickland, 466 U.S. at 694 (prejudice requires "a probability sufficient to undermine confidence in the outcome.") The adjudication of claims one and two is therefore neither contrary to, nor involves an unreasonable application of, clearly established federal law. Richter, 562 U.S. at 105 ("The standards created by Strickland and section 2254(d) are

both highly deferential and when the two apply in tandem, review is 'doubly' so."); Pinholster, 563 U.S. at 181 (these standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."). Neither is there any basis to find that the state court adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Miller-El, 537 U.S. at 340. Habeas relief is denied as to claims one and two.

In claims three and four Petitioner alleges his appellate counsel should have raised claims on appeal alleging ineffective assistance of his trial counsel in failing to move to suppress evidence obtained from the cell phones (claim three), and failing to challenge the cell phone search and telephone provider subpoenas (claim four). (ECF No. 1 at 41-60.) As set forth above, Petitioner's trial counsel did in fact seek to have the text messages regarding moving watches suppressed on the basis that there was an insufficient foundation to show Petitioner sent or received them, as they were found on a phone which was not registered to him, and counsel sought to have all the evidence seized from Petitioner's vehicle and motel room suppressed, including the phones, on the basis they were seized without a warrant. For the reasons discussed above, even assuming trial counsel should have also argued that the search of the contents of the phones exceeded the scope of the subpoenas issued to obtain service provider records, or were searched without warrants, Petitioner has failed to demonstrate a reasonable probability of a more favorable outcome had that evidence been excluded. See Featherstone v. Estelle, 948 F.2d 1497, 1507 (9th Cir. 1991) (holding that where "trial counsel's performance, although not error-free, did not fall below the Strickland standard," no prejudice arose from appellate counsel's failure to challenge trial counsel's performance on appeal). It was objectively reasonable for the state court to find no prejudice as a result of appellate counsel's failure to raise a claim on appeal challenging trial counsel's challenges to the cell phone searches. See Woods v. Etherton, 576 U.S. ___, 136 S. Ct. 1149, 1152-53 (2016) (finding no Strickland prejudice arising from appellate counsel's failure to raise claim of ineffective assistance of trial counsel where there was no Strickland prejudice arising from trial counsel's alleged error).

Thus, for the same reasons discussed in claims one and two, Petitioner has not overcome the strong presumption that appellate counsel made a reasonable tactical decision to forego raising claims alleging trial counsel was ineffective in failing to challenge the search of the cell phones, and has failed to show it was objectively unreasonable for the state court to find he had not been prejudiced as a result of appellate counsel's failure to raise these claims. Habeas relief is denied as to claims three and four.

Petitioner alleges in claims five and six that his appellate counsel was ineffective in failing to raise a claim on appeal alleging trial counsel was ineffective in failing to: (a) thoroughly examine the search warrant obtained by Detective Meeker in order to determine if it could be attacked as failing to include permission to search the contents of the phone itself rather than merely obtaining the telephone provider records; (b) object to the testimony of Investigator Lopez at trial regarding when he logged in DNA evidence, which Petitioner contends amounts to perjury because it differed from Lopez's preliminary hearing testimony; (c) object to the preliminary hearing testimony of Detective Meeker as to who checked McKnight in at the Hampton Inn motel, which Petitioner contends amounts to perjury because the motel clerk testified someone else checked in McKnight; (d) seek a mistrial based on that perjured testimony; (e) challenge as unduly suggestive the photographic identification by the motel clerk of Petitioner as the man accompanying McKnight; (f) interview any witnesses or conduct any investigation, and rather than develop a trial strategy that would subject the prosecution's evidence to meaningful adversarial testing, merely told Petitioner that his trial strategy would be to "pok[e] holes in their story"; and (g) object to the admission of a photograph of Tony Montana, aka Scarface, killing people with an assault rifle, which the prosecutor used during closing argument to argue McKnight was protecting Petitioner. (Id. at 61-88.)

Petitioner's repeated claims that his appellate counsel was deficient in failing to object to trial counsel's failure to challenge the admission of the cell phone records do not support habeas relief for the reasons set forth above. With respect to the minor inconsistencies in the trial testimony which Petitioner contends amounts to perjury, the

state appellate court, as set forth above, prior to finding that Petitioner had not established Strickland prejudice, stated:

> The claims based on false testimony, though cognizable in a habeas corpus proceeding (Pen. Code, § 1473, subd. (b)(1)), fail because the conflicts in the trial testimony Chavira identifies are insufficient by themselves to establish the law enforcement officers testified falsely. (*In re Roberts* (2003) 29 Cal.4th 726, 742-743.) Moreover, even if their testimony was false, Chavira has not established it was so significant that there is a reasonable probability it could have affected the outcome of his trial. (*In re Cox* (2001) 30 Cal.4th 974, 1008.) The evidence of Chavira's guilt, as summarized in the opinion on direct appeal, was overwhelming. The few conflicts in the testimony he identifies concern minor points and do not undermine this court's confidence in the outcome of the trial. (*Id.* at p. 1009.)

(Lodgment No. 13, In re Chavira, No. D067302, order at 2.)

Petitioner contends that Detective Meeker testified at the preliminary hearing that Rajvomder Ghag told him she checked McKnight into the Hampton Inn the night before the Ben Bridge Jewelry store was robbed on October 15, 2011, which is about a twenty minute drive away from the motel (RT 815), but that Meeker perjured himself because Ghag testified at trial that McKnight was checked in by her coworker Jessica Ebbers. (ECF No. 1 at 64.) Jessica Ebbers testified at trial that she was working at the front desk of the Hampton Inn on October 14, 2011, when McKnight checked in. (RT 819.) Ebbers said she had an extensive conversation with McKnight when he checked in, lasting about fifteen minutes, but did not remember seeing him when he checked out. (RT 819-20, 826.) Rajvomder Ghag testified at trial that she was working as the manager of the hotel that night, but that Ebbers checked in McKnight. (RT 809-16.) Petitioner claims that Detective Meeker committed perjury because he testified at the preliminary hearing that Ebbers told him that she had an extensive conversation with McKnight when he checked out, rather than when he checked in as Ebbers testified to at trial, and when he said Ghag told him she checked McKnight in when Ebbers testified at trial that she checked him in. (ECF No. 1 at 64.) Petitioner fails to explain how minor errors in the preliminary hearing testimony, which were corrected at trial, amounted to perjury, or in any way affected his trial.

Petitioner contends that prosecution investigator Ernest Lopez committed perjury when he testified at trial that he transported DNA swabs from the San Bernardino Sheriff's Crime Lab on November 10, 2011, because DNA analyst Jennifer Steel testified that she received those items on November 15, 2011, five days later. (ECF No. 1 at 78.) However, Investigator Lopez testified at trial that he transported DNA swabs on November 10, 2011 and November 14, 2011, and placed them in an evidence locker. (RT 1468, 1471.) Jennifer Steel testified that she first received the DNA evidence on November 15, 2011, but did not testify that she personally received it from Lopez, as opposed to having received it from the evidence locker where it had been deposited by Lopez. (RT 1601.) Petitioner contends Lopez testified in grand jury proceedings that he did not log in any DNA samples before November 15, 2011, which he contends supports McKnight's testimony that he thought the Riverside County police detectives must have planted his DNA. (ECF No. 1 at 78-80.) However, Petitioner has failed to show any discrepancy in the trial testimony which would amount to perjury, and has failed to show a reasonable probability that his trial was affected in any way. Thus, the state court adjudication of the claim that appellate counsel failed to challenge that testimony, or raise an appellate claim based on trial counsel's failure to request a mistrial based on that testimony, on the basis that such minor discrepancies do not establish either perjury or prejudice, is objectively reasonable.

Petitioner next contends that his appellate counsel should have raised a claim alleging trial counsel failed to object to the photographic identification by Jessica Ebbers. (ECF No. 1 at 65.) Ebbers testified that McKnight was with another man when he checked in to the Hampton Inn. (RT 820-21.) She said Detective Meeker came to the motel at some point and showed her a photograph of McKnight, which she identified, and then showed her a photograph of Petitioner, which she identified as the man with McKnight. (RT 821-22.) At trial the prosecutor showed Ebbers a photograph of Petitioner, which she said was a photograph of the man with McKnight that night, but when asked if it was the same photograph Detective Meeker had previously showed her, she replied: "I think it's a different photo than the one that he showed me, but it was kind of a long time ago." (RT

823-24.) Ebbers was unable to identify Petitioner in court at trial as the man who accompanied McKnight. (RT 825.)

Petitioner contends counsel should have challenged the identification, but does not explain what challenge was available other than that it was "subjective." (ECF No. 1 at 65, 70.) Because Petitioner does not allege any infirmity in the identification procedure at the motel, and because Ebbers could not identify Petitioner at trial, this claim does not provide a basis for habeas relief. See Simmons v. United States, 390 U.S. 377, 384 (1968) (holding that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification").

Petitioner next contends that appellate counsel was ineffective in failing to raise a claim based on trial counsel's failure to conduct a reasonable pretrial investigation and develop a reasonable trial strategy. (ECF No. 1 at 66.) Petitioner states that when he asked his trial counsel what his trial strategy was, counsel replied he would be "poking holes in their story," which Petitioner contends is an insufficient trial strategy. (Id. at 68-69.) However, because Petitioner does not allege any facts which, if true, would demonstrate a reasonable possibility of a different outcome had his appellate counsel raised a claim challenging his trial counsel's failure to develop a trial strategy or conduct a pretrial investigation, he has failed to show that the state court adjudication of this claim, on that basis, is objectively unreasonable.

Petitioner next contends appellate counsel was ineffective in failing to raise a claim alleging trial counsel was ineffective in failing to interview witnesses, although he only identifies counsel's failure to interview Jessica Ebbers regarding her identification. (ECF No. 1 at 66.) Petitioner does not explain how interviewing Ebbers could have assisted the defense, particularly since she was unable to identify him in court as the man who was with McKnight at the Hampton Inn on October 14, 2011, the day before the robbery of the nearby Ben Bridge Jewelry store. In any case, her identification was cumulative to cell

phone provider evidence obtained pursuant to a subpoena which placed Petitioner and McKnight in the area of the Hampton Inn that night and the next morning. (RT 711-20.)

Finally, Petitioner alleges in claim seven that his appellate counsel should have raised a claim alleging the prosecutor committed misconduct when she misstated the law and evidence, took on investigatory functions, coached witnesses, commented on Petitioner's failure to testify, asked leading questions, suborned perjury, allowed a witness to infer Petitioner was on probation, and showed the jury a photograph of Tony Montana, aka Scarface, killing people with an assault rifle. (ECF No. 1 at 71, 89-118.)

In order to rise to the level of a federal due process violation, prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Greer v. Miller, 483 U.S. 756, 765 (1987), quoting United States v. Bagley, 473 U.S. 667, 676 (1985). The alleged misconduct must be reviewed in the context of the entire trial. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Williams v. Borg, 139 F.3d 737, 744 (9th Cir. 1998).

Petitioner first contends the prosecutor commented on his failure to testify. The prosecutor, during closing argument, in response to defense counsel's argument that there was no evidence Petitioner was using his cell phone when the provider records showed he was in the area of the robberies, and that it may have been used by Adrian Ramos who was also a suspect in the robberies, stated: "But if Adrian Ramos was using Mr. Chavira's phone and talking to Mr. Chavira's girlfriend and his children, why did they not testify that they were talking to Mr. Ramos?" (RT 2649.) That was a comment on the failure of the defense to call those other witnesses to support the defense argument that Petitioner had lent out his phone, not a comment on Petitioner's failure to so testify.

Petitioner contends the prosecutor misstated the law on reasonable doubt when she stated during closing argument: "And I will keep hammering 'reasonable' because that's what our burden is. It's beyond a reasonable doubt because everything in life is open to

some speculation or conjecture. You can't do that. You have to reply [sic] upon the evidence in this case. And beyond a reasonable doubt simply means that guilty is the only reasonable interpretation of the evidence while innocence is not." (RT 2637.) Petitioner has not shown this comment amounted to misconduct, misled the jury, or lowered the burden of proof. As discussed below in claim ten, the jury was correctly instructed regarding reasonable doubt, and the prosecutor and defense counsel repeatedly reminded the jury of the prosecution's burden of proof as to every element of each offense.

Petitioner contends the prosecutor, during trial, allowed a witness to testify that a probation officer was involved in Petitioner's arrest. (ECF No. 1 at 92-93.) Officer Walb testified that he was a San Diego Police Officer assigned to the gang suppression team and was called by the robbery division to assist in arresting Petitioner after his vehicle had been stopped by other officers. (RT 482-83.) Officer Walb testified that: "It was a high-risk vehicle stop and myself and my partner, probation officer Barnum," responded to the scene. (RT 483.) The defense made a motion for mistrial on the basis that allowing Walb to mention the presence of a probation officer violated a pretrial order not to mention that Petitioner was on parole when he was arrested. (RT 504-05.) The trial judge denied the motion on the basis that: "There is nothing even close to the conclusion to be reached that either of the defendants were on probation. The fact that a probation officer may have been with a police officer at the time they were doing a stop doesn't mean they were stopping a probationer," and even offered to so instruct the jury. (RT 505.) Petitioner has not alleged misconduct by the prosecutor in failing to prevent the witness from mentioning that his partner was a probation officer, and has not shown it was "of sufficient significance to result in the denial of [his] right to a fair trial." Greer, 483 U.S. at 765.

Petitioner contends the prosecutor committed misconduct when, during closing argument, she referenced text messages authored by McKnight and sent to Petitioner stating that Petitioner reminded McKnight of Tony Montana, aka Scarface. (RT 2529-30, 2558.) The prosecutor argued that the jury could draw a reasonable inference from those texts that McKnight saw Petitioner as a gangster like Montana and wanted to work for him,

and that Petitioner was the brains of their criminal enterprise, which also undermined McKnight's testimony that Petitioner was not involved in the crimes. (Id.) Petitioner has not shown misconduct by the prosecutor in referencing McKnight's own comparison of Petitioner to Tony Montana, or in arguing the jury could draw reasonable inferences from that evidence. See Borg, 139 F.3d at 744 ("The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

Petitioner contends the prosecutor created a chart to explain to the jury the DNA evidence, thereby taking on investigative functions, misstated a penal code section to the trial judge, asked leading questions, coached witnesses, and misstated the DNA evidence (ECF No. 1 at 93-96, 107-15), but does not explain how these actions amounted to misconduct or, even if they did, how they affected his trial. His contention the prosecutor allowed Lopez and Meeker to commit perjury (id. at 97-98, 116-17), is without merit for the reasons discussed above. Finally, his claim that appellate counsel failed to conduct a meaningful investigation by failing to identify all of the alleged trial errors (id. at 118), is without merit because the underlying claims are without merit. See Miller, 882 F.2d at 1434 ("In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy."); Baumann, 692 F.2d at 572 (stating that an attorney's failure to raise a meritless legal argument does not constitute ineffective assistance). Habeas relief is denied as to claim seven.

In sum, with respect to claims one through seven, Petitioner has not shown his appellate counsel was deficient, and has failed to show that the state court adjudication of these claims, on the basis of a lack of prejudice, is either contrary to, or involves an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. See Padilla, 559 U.S. at 371 ("Surmounting Strickland's high bar is never an easy task."); Richter, 562 U.S. at 105 ("The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review

is 'doubly' so."); <u>Pinholster</u>, 563 U.S. at 181 (these standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."). Habeas relief is denied as to clams one though seven.

### 2. Claims Nine and Ten

Petitioner claims he received ineffective assistance of appellate counsel due to counsel's failure to raise claims alleging that one of the two prior strike convictions used to enhance his sentence is invalid (claim nine), and alleges error in the reasonable doubt jury instruction (claim ten). (ECF No. 1 at 132-55.) Respondent answers that habeas relief cannot be granted as to these claims because Petitioner failed to present them to any state court, but they should be denied notwithstanding that failure because they are without merit. (Ans. Mem. at 7-8.) After the Answer was filed, Petitioner submitted these claims to the state supreme court in a habeas petition, which was denied with an order which stated: "The petition for writ of habeas corpus is denied. (See *In re Robbins* (1998) 18 Cal.4th 770, 780 (courts will not entertain habeas corpus claims that are untimely); *In re Clark* (1993) 5 Cal.4th 750, 767-769 (courts will not entertain habeas corpus claims that are successive).)" (ECF No. 20 at 57, <u>In re Chavira</u>, No. S237668, order at 1.)

Although Respondent has not had the opportunity to address whether claims nine and ten are untimely and procedurally defaulted, which they likely are, the Court has the discretion to deny them without regard to any procedural infirmities if they are clearly without merit. The Ninth Circuit has indicated that "it may well make sense in some instances to proceed to the merits [rather than address procedural bars] if the result will be the same." <u>Franklin</u>, 290 F.3d at 1232, citing <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."); <u>see also</u> <u>Berghuis</u>, 560 U.S. at 390 (holding that irrespective of whether AEDPA deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one).

Petitioner alleges in claim nine that his appellate counsel should have raised a claim on appeal challenging the use of his prior conviction for witness intimidation to enhance

his sentence. (ECF No. 1 at 134.) He claims that his guilty plea in the prior conviction was the result of ineffective assistance of counsel, and that he would not have pled guilty but for the fact that his attorney advised him that it could not be used as a strike in a future case. (Id.) His trial counsel in this case filed a pretrial motion to preclude the use of that conviction as a strike on that basis. (CT 48-86.) Petitioner contends the trial judge denied the motion to dismiss, even though the judge felt it had merit, because only the court of appeal was in a position to grant relief, and therefore his appellate counsel was deficient in seeking such relief on appeal. (ECF No. 1 at 134.) Respondent answers that trial courts in California are not required to advise defendants of such potential, indirect consequences of guilty pleas, and that in any case the change of plea colloquy in the prior conviction indicates Petitioner knew it could be used as a strike in the future, and appellate counsel cannot be ineffective for failing to raise a meritless claim. (Ans. Mem. at 8.)

The change of plea form for Petitioner's prior conviction is in the record (CT 64-66), along with the transcript of the change of plea hearing (CT 68-84), as exhibits to his pretrial motion to preclude its use as a strike. Rather than containing Petitioner's initials like the other boxes on the change of plea form, there is an X in the box next to the statement: "I understand that my conviction in this case will be a serious/violent felony ('strike') resulting in mandatory denial of probation and substantially increased penalties in any future felony case." (CT 65.) However, Petitioner did initial the box indicating that his attorney had explained to him that one of the possible consequences of his guilty plea may be that the conviction is "Priorable (increased punishment for future offenses)," and that he would be subject to: "Reduced conduct credits a. Violent Felony (No credit or max. 15%) b. Prior Strike(s) (No credit to Max. 20%)." (Id.) And at the change of plea hearing Petitioner was asked: "There would be increased penalties in the future if you're not law-abiding. And because of the strike, it will amplify the punishment, and you'll get no good-time credits. You understand that?"; to which he responded: "Yes, sir." (CT 74.)

Respondent is correct that under California law a criminal defendant pleading guilty is not required to be advised that the offense might be used in a subsequent criminal

15cv1997-WQH (BGS)

proceeding to enhance his sentence. <u>People v. Crosby</u>, 3 Cal.App.4th 1352, 1356 (1992). However, Petitioner argued in the motion to dismiss that the attorney who represented him at the guilty plea in the prior conviction rendered ineffective assistance in preparing the conflicting change of plea form and erroneously advising him that the conviction would not constitute a strike in the future, and stated that he and his prior counsel were prepared to so testify at an evidentiary hearing. (CT 50-54.) The trial judge stated that the record appeared to indicate that everyone involved in the prior proceeding was operating "under the impression that there was no strike," and said he would be inclined to grant the motion to dismiss but for the fact that his hands were tied by the California Supreme Court's decision in <u>Garcia v. Superior Court</u>, 14 Cal.4th 953, 966 (1997), which held: "In sum, we conclude that a defendant whose sentence for a noncapital offense is subject to enhancement because of a prior conviction may not employ the current prosecution as a forum for challenging the validity of the prior conviction based upon alleged ineffective assistance of counsel in the prior proceeding." (RT 1-9.) The trial judge rejected the same argument in a post-trial motion to strike the strike in the exercise of discretion, finding that Petitioner had just been convicted of 24 new strikes and was a career criminal before the instant offenses, and clearly fell within the spirit of the three strikes law. (RT 2751-58.)

There is no state court decision on the merits of this claim, as it was denied on the procedural grounds that it was presented in an untimely and successive habeas petition. However, the claim fails under a de novo review. Petitioner is unable to demonstrate deficient performance arising from his appellate counsel's failure to challenge the denial of the motion to dismiss his prior conviction because, as the trial judge correctly observed, the California Supreme Court, following the United States Supreme Court, prohibits challenges to a prior conviction in a current criminal prosecution based on a claim of ineffective assistance of counsel in the prior conviction. <u>Garcia</u>, 14 Cal.4th at 963-66, discussing <u>Custis v. United States</u>, 511 U.S. 485, 497 (1994) (holding that principles of finality associated with habeas corpus actions apply when a defendant seeks to attack, on the basis of ineffective assistance of counsel, a prior conviction used to enhance a sentence,

and those principles bear "extra weight" when the prior conviction was obtained as a result of a guilty plea). Petitioner is not able to collaterally challenge his prior conviction in this Court in a habeas petition brought pursuant to 28 U.S.C. § 2254. <u>Lackawanna County District Attorney v. Coss</u>, 532 U.S. 394, 403-04 (2001) ("[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.") (citation omitted). The United States Supreme Court has "recognized only one exception to the rule that collateral attacks are off-limits, and that was for challenges to state convictions alleged obtained in violation of the right to appointed counsel." <u>Johnson v. United States</u>, 544 U.S. 295, 303 (2005). However, in addition to the exception for a failure to appoint counsel, which does not apply here, a plurality of the Supreme Court has recognized exceptions where the state court "without justification, refuse[s] to rule on a constitutional claim that has been properly presented to it," or where a petitioner has obtained "compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." <u>Lackawanna</u>, 532 U.S. at 405; <u>see also</u> <u>Daniels v. United States</u>, 532 U.S. 374 (2002) (same as to habeas petition filed pursuant to 28 U.S.C. § 2255). For the following reasons, neither of those exceptions apply.

State law obligated Petitioner to challenge the prior conviction in a habeas petition if he wished to challenge it at all. <u>See</u> <u>Garcia</u>, 14 Cal.4th at 966 (holding that a defendant "may not employ the current prosecution as a forum for challenging the validity of the prior conviction based upon alleged ineffective assistance of counsel in the prior proceeding," but observing that "[i]f a defendant successfully challenges a prior conviction in [a court of appropriate jurisdiction], and that conviction is vacated or set aside, however, the conviction no longer constitutes a proper basis for increased punishment for a subsequent

offense under a recidivist offender sentencing statute. A defendant according may obtain a reduction of a sentence that was imposed on the basis of that prior invalid conviction."), citing Larsen v. Department of Motor Vehicles, 12 Cal.4th 278, 284 (1995) (recognizing that a criminal defendant can challenge the validity of the use of the prior conviction to enhance his sentence in "a habeas petition after the increased sentence has been imposed."); People v. Goodrum, 228 Cal.App.3d 397, 400 n.4 (1991) (recognizing that challenges to guilty pleas based on fraud or duress by the prosecutor or judge are styled as a petition for a writ of error coram nobis, whereas "[o]bviously, if a defendant enters a plea based on the erroneous advice of counsel without judicial or prosecutorial involvement, the sole postappeal remedy would be a petition for writ of habeas corpus alleging ineffective assistance of counsel."). The United States Supreme Court has not recognized a federal constitutional right to the effective assistance of counsel on state collateral review, even where state collateral review provides the only opportunity to raise a claim of ineffective assistance of counsel. Martinez v. Ryan, 566 U.S. 1, 8-9 (2012). Thus, Petitioner is unable to proceed with a claim in this Court alleging that his federal constitutional rights were violated by his appellate counsel's failure to collaterally challenge the prior conviction. Id.; see also 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.")

Accordingly, claim nine, alleging ineffective assistance of appellate counsel in failing to challenge the validity of the use of Petitioner's prior conviction to enhance his sentence, does not provide a basis for federal habeas relief because appellate counsel was precluded by state law from challenging the prior conviction on direct appeal, and Petitioner cannot rely on ineffective assistance of appellate counsel in failing to collaterally

attack the prior conviction.  In addition, he has not established an exception under Lackawanna to the prohibition of attacking the validity of his prior conviction in this Court.  Based on a de novo review, habeas relief is denied as to claim nine.

Petitioner alleges in claim ten that his appellate counsel should have raised a claim on appeal directly challenging the reasonable doubt jury instruction given at his trial, or should have raised a claim of ineffective assistance of trial counsel for failing to challenge the instruction.  (ECF No. 1 at 139-55.)  He contends the instruction omitted the phrase "each element" from the requirement the prosecution must prove each element beyond a reasonable doubt, thereby lowering the burden of proof, which he contends is particularly problematic here because the evidence against him is entirely circumstantial.  (Id.)  Respondent answers that because the instruction was a correct statement of law, and because any error would likely have been found to be harmless, appellate counsel could reasonably have decided not to raise such a claim.  (Ans. Mem. at 9.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  The Constitution requires the jury be instructed that the defendant's guilt be established beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 320 n.14 (1979).  In order to prevail on a claim alleging a defective reasonable doubt instruction, a petitioner must show there is a reasonable likelihood the jury understood the instructions to allow them to convict based on proof insufficient to meet the Winship standard.  Victor v. Nebraska, 511 U.S. 1, 5 (1994); Lisenbee v. Henry, 166 F.3d 997, 999 (9th Cir. 1999).  Any such instructional error is subject to harmless error review.  Estelle v. McGuire, 502 U.S. 62, 72 (1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); Donnelly, 416 U.S. at 643; Sullivan v. Louisiana, 508 U.S. 275, 281 (1993).

The California courts have rejected the same challenge Petitioner presents here.  People v. Reed, 38 Cal.2d 423, 430 (1952); People v. Orchard, 17 Cal.App.3d 568, 576-77 (1971).  Thus, Petitioner's appellate counsel was not deficient in failing to challenge the

instruction on appeal, and Petitioner was not prejudiced by that failure, because the appellate court would have been bound by precedent to deny the claim.

It is also clear Petitioner has not established prejudice as a result of his appellate counsel's failure to allege his trial counsel failed to challenge the instruction, because there is no reasonable probability of a more favorable outcome had such a claim been raised. Assuming it was error to omit the phrase "every element" in the instruction, it would have been futile to challenge the instruction on that basis because such an error is clearly harmless. In applying harmless error review, a federal habeas court must examine whether the error "had a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). "Under this standard, an error is harmless unless the 'record review leaves the conscientious judge in grave doubt about the likely effect of an error . . . (i.e.,) that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" Padilla v. Terhune, 309 F.3d 614, 621-22 (9th Cir. 2002), quoting O'Neal v. McAninch, 513 U.S. 432, 435 (1995) and citing Kotteakos v. United States, 328 U.S. 750, 765 (1946) ("[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.")

The prosecutor told the jury during closing argument that "you have to find beyond a reasonable doubt that all the elements have been met." (RT 2489.) Petitioner's trial counsel told the jury during closing argument: "Remember that the prosecution must prove to you each and every element of each and every crime or charge beyond a reasonable doubt in order for you to reach a guilty verdict on any particular count." (RT 2570.) Defense counsel later referenced the reasonable doubt instruction given in this case, and argued the prosecution has "to prove each and every element of each crime to find anybody guilty, and we get to what I think is if not the most important jury instruction, as least one of them, and it's called CALCRIM 220. It's the reasonable doubt instruction." (Id.) Defense counsel later reminded the jury again of that requirement when he said: "Now, I

would ask that you hold the prosecution to task, again, in their burden of proof on all these elements of robbery from all of the robbery locations." (RT 2627.) The prosecutor, in rebuttal, told the jury that: "The People have the burden in this case, absolutely. Our burden is to prove every count and every element of every count beyond a reasonable doubt. This is absolutely our burden." (RT 2649.) There is no doubt whatsoever, much less a grave doubt, that the absence of the phrase "every element" in the reasonable doubt instruction did not "ha[ve] a substantial and injurious effect or influence" on the verdict. Brecht, 507 U.S. at 623.

Accordingly, the Court denies habeas relief as to claim ten because, based on a de novo review, Petitioner has failed to establish deficient performance or prejudice as a result of his appellate counsel's failure to challenge the reasonable doubt instruction, or raise a claim that trial counsel erred in failing to challenge the instruction.

### 3. Claim Eight

Petitioner alleges in claims eight and eleven that the California Superior Court's denied his state habeas claims as procedurally barred because they were not raised on direct appeal. ECF No. 1 at 120, 157. Petitioner alleges that this decision was erroneous because his claims fall into the an exception to the rule barring petitioners from asserting claims not raised on appeal that applies to claims that were not raised on appeal due to ineffective assistance of appellate counsel. ECF No. 1 at 120 (citing In re Harris, 855 P.2d 391, 402 (1993), as modified (Sept. 30, 1993)).

Under California law, "an unjustified failure to present an issue on appeal will generally preclude its consideration in a postconviction petition for a writ of habeas corpus." In re Harris, 855 P.2d 391 at 398. Failure of appellate counsel to raise an issue on appeal does not justify the failure to present that issue on appeal, and therefore does not allow a petitioner to present that issue in a habeas petition. Id. at 401. Rather, appellate counsel's failure to present an issue on appeal can be addressed through a habeas petition

alleging ineffective assistance of counsel.[2]  Id.  Consequently, the Superior Court correctly concluded that Petitioner's habeas claims were procedurally barred because they were not raised on appeal; Petitioner has not identified an error in the Superior Court's application of California's procedural rules.  Petitioner also does not contend that the procedural rules violate the Due Process Clause.  Habeas relief is denied as to claim eight.  See e.g. McGuire, 502 U.S. at 72 (holding that to merit federal habeas relief based on an error of state law, the petitioner must show that the error, considered in the context of the record as a whole, so infected the entire proceedings that the conviction violated due process).

### 4.  Claim Twelve

Petitioner alleges in claim twelve that insufficient evidence was presented at trial to support the false imprisonment convictions as to counts 15, 20 and 21, involving the Leeds & Son Jewelry robbery.  (ECF No. 1 at 165.)  He claims that the three victims in those counts were employees who hid in the back of the store during the robbery, and because the robbers did not know these victims were there and did not show any interest in the back of the store, they could not have had the intent to violate their personal liberty as required to support a false imprisonment conviction.  (Id. at 186-88.)  Respondent answers that the denial of this claim by the state court is objectively reasonable.  (Ans. Mem. at 9-11.)

Petitioner presented this claim to the state supreme court in a petition for review which was summarily denied without a statement of reasoning.  (Lodgment Nos. 6-7.)  It was presented to the appellate court on direct appeal and denied in a written opinion. (Lodgment Nos. 3, 5.)  The Court will look through the silent denial of this claim by the state supreme court to the appellate court opinion on direct appeal, which stated:

> Defendants challenge the sufficiency of the evidence supporting three of the convictions for false imprisonment arising out of the robbery at Leeds & Son (counts 15, 20, & 21).  Specifically, defendants argue that because the victims hid in a back office during the robbery, defendants could not have known of the victims' existence and therefore could not have intended to

---

[2] Petitioner's claim eleven seeks habeas relief based on his appellate counsel's failure to raise issues on direct appeal.  See Part III.C.4, infra.

restrict their personal liberty. After setting forth additional background and the applicable standard of review, we shall analyze this argument.

///

### 1. Additional Background

Darlene Bingham, Christine Stein, and Kim Fuerst were working at Leeds & Son when defendants robbed the store. While Bingham and Stein were in the back office and Fuerst was on the sales floor, three armed men wearing ski masks and body armor entered the store, ordered all present to get on the floor and not move, and threatened to shoot them if they did not comply. Fuerst heard a security guard shout a code word indicating trouble, saw one of the masked men holding "a big gun," and then ran to the back office. Stein heard loud noises, glanced at a video surveillance monitor of the sales floor, saw people moving about quickly, and suspected the store was being robbed. After Fuerst ran to the back office, Bingham or Stein closed the vault, and secured the office door, and all three hid under a desk until police arrived a few minutes later. While they were hiding in the back office, Bingham, Stein, and Fuerst were "scared" and did not feel free to leave the office.

Based in part on these facts, the People charged defendants with false imprisonment of Bingham (count 15), Stein (count 20) and Fuerst (count 21) by means of violence, menace, fraud, or deceit. (§§ 236, 237, subd. (a).) The jury returned guilty verdicts against both defendants on each count.

### 2. Standard of Review

"In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. (Citation.) We neither reweigh the evidence nor reevaluate the credibility of witnesses. (Citation.) We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. (Citation.) If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639.

### 3. Legal Analysis

15cv1997-WQH (BGS)

To establish the false imprisonment offenses charged in counts 15, 20, and 21, the People had to present evidence that defendants committed an "unlawful violation of the personal liberty of" Bingham, Stein, and Fuerst by means of "violence, menace, fraud, or deceit." (§§ 236, 237, subd. (a).) "(T)he essential element of false imprisonment is restraint of the person. Any exercise of express or implied force which compels another person to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment." (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123 (*Bamba*).) False imprisonment requires only general criminal intent, i.e., the defendant must intend to commit an act the natural, probable, and foreseeable consequence of which is the nonconsensual confinement of another person. (*People v. Olivencia* (1988) 204 Cal.App.3d 1391, 1399-1400 (*Olivencia*).) As used in section 237, subdivision (a), "'violence' means '"the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint,"'" and "'menace' means '"a threat of harm express or implied by word or by act."'" (*Bamba*, at p. 1123.)

The evidence the People presented at trial was sufficient to support the challenged false imprisonment convictions. The testimony of percipient witnesses and video surveillance established that three armed men wearing ski masks entered Leeds & Son during regular business hours when several employees were in the store, pointed guns at them, ordered them to get on the floor and not move or risk being shot, and then proceeded to smash display cases and steal watches and other jewelry. We think it a natural, probable, and foreseeable consequence of these intentional acts by the robbers that individuals already in the store would be so frightened that they would suffer nonconsensual confinement by obeying the robbers' orders to get on the floor and remain motionless, or by fleeing to a location in the store they deemed safe and remaining there until help arrived. Indeed, Fuerst, Bingham, and Stein each testified to such fear and confinement. The testimony of these and other percipient witnesses and the video surveillance of the robbery thus established defendants committed an "unlawful violation of the personal liberty of another" by means of "violence" or "menace." (§§ 236, 237, subd. (a); see *Bamba*, *supra*, 58 Cal.App.4th at p. 1123.) The People did not also have to prove, as defendants erroneously contend, that the robbers knew Bingham, Stein, and Fuerst were in the back office during the robbery or that "the robbers intended to violate the personal liberty of these women." (See *Olivencia*, *supra*, 204 Cal.App.3d at p. 1399 ("No specific state of mind is required."); *People v. Swanson* (1983) 142 Cal.App.3d 104, 110 ("No such mental state (analogous to specific intent) is involved in a false imprisonment charge.").)

(Lodgment No. 5, <u>People v. Chavira, et al.</u>, No. D063089, slip op. at 8-12.)

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>Winship</u>, 397 U.S. at 364. The Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to federal habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324. A federal habeas court must apply an additional layer of deference in applying the <u>Jackson</u> standard, and "must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' <u>Jackson</u> and <u>Winship</u> to the facts of this case." <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005), quoting 28 U.S.C. § 2254(d)(1). Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," not as a means of error correction. <u>Richter</u>, 562 U.S. at 103, quoting <u>Jackson</u>, 443 U.S. at 332 n.5.

Petitioner argues that the robbers were focused entirely on the front of the store and showed no interest in the vault or back area where the three victims were hiding, and the robbers could not have formed the intent to deprive them of their personal liberty without awareness of their presence. (ECF No. 1 at 187-88.) He contends the appellate court correctly noted that intent to commit an act, the natural, probable and foreseeable consequence of which is the nonconsensual confinement of a victim, is sufficient to satisfy the crime of false imprisonment, but argues that standard could not be satisfied where there is nothing in the record to even suggest the robbers were aware of the presence of the three people hiding in the back of the store. (<u>Id.</u>)

<u>Jackson</u> claims must be analyzed "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Id.</u> at 324 n.16; <u>see also</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) (holding that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.") It was objectively reasonable for the state court to find that restraining employees of their personal liberty, even employees who were

hiding as a result of the robbery, was a natural, probable and foreseeable consequence of entering the store brandishing automatic weapons, yelling for everyone to refrain from interfering with the robbery at the risk of their lives, and smashing the display cases with sledgehammers. Kim Fuerst testified that when she saw a man enter the store with "a very large gun in his hand," she ran to the back room and ducked behind a desk, and she said she did not feel free to leave until the police arrived. (RT 1416-17.) Darlene Bingham testified that she was working in the back room of the store when Kim Fuerst ran in and hid behind a desk, and that Bingham then closed the door, hid behind a desk, and was afraid the robbers might break down the door. (RT 1421-23.) Obviously, any employee in the store, whether standing by the display cases or sitting at a desk in the back room handling accounts, were subject to the robbers' threat not to interfere with the robbery. There is nothing in the record to suggest the robbers had reason to believe there were not employees in the back of the store, such as, for example, if the robbers had targeted the store when it was closed.

In light of the additional layer of deference this Court must give in applying the Jackson standard, see Juan H., 408 F.3d at 1274, and the Supreme Court's admonition that federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction, Richter, 562 U.S. at 103, quoting Jackson, 443 U.S. at 332 n.5, it is clear that sufficient evidence was presented at trial to support Petitioner's convictions for false imprisonment. The state court adjudication of this claim does not reflect "an 'unreasonable application of' Jackson and Winship to the facts of this case." Juan H, 408 F.3d at 1274. In addition, there is no basis to find that the factual findings upon which the state court's adjudication of this claim rest are objectively unreasonable. Miller-El, 537 U.S. at 340.

Habeas relief is denied as to claim twelve because the state court adjudication of the claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.

### 5. Claim Thirteen

Petitioner alleges in his final claim, as he did in state court on direct appeal, that the prosecution's burden of proof was lowered when the jury was instructed that if they found that Petitioner possessed recently stolen property, and knew it was stolen, they could find him guilty on the robbery and burglary charges if they found supporting evidence, however slight, of robbery and burglary. (ECF No. 1 at 165, 188-97.) Respondent answers that the rejection of this claim by the appellate court, on the basis that such a permissible inference instruction does not violate federal due process because it is based on reason and common sense, is neither contrary to, nor an unreasonable application of, clearly established federal law. (Ans. Mem. at 12-13.)

Petitioner presented this claim to the state supreme court in a petition for review. (Lodgment No. 6.) That petition was summarily denied without a statement of reasoning. (Lodgment No. 7.) Petitioner also presented the claim to the appellate court on direct appeal. (Lodgment No. 3.) The appellate court denied the claim in a written opinion. (Lodgment No. 5.) The Court will therefore look through the silent denial by the state supreme court to the last reasoned state court opinion addressing the claim, the appellate court opinion on direct appeal. Ylst, 501 U.S. at 803-06. The appellate court stated:

> C.  *The Trial Court Did Not Violate Defendants' Due Process Rights by Instructing the Jury with CALCRIM No. 376*
>
> Defendants contend the trial court committed prejudicial error and violated their due process rights by instructing the jury with CALCRIM No. 376 that it could find defendants guilty of robbery or burglary if they knowingly possessed recently stolen property and other evidence tended to prove their guilt. [Footnote 1] Defendants complain the instruction "permitted an inference of guilt without a rational basis," "intruded on the fact-finding process, inadequately guided the jury's deliberations, was misleading and confusing," and "created an unbalanced charge to the jury." These complaints have no merit.
>
> Footnote 1:  The trial court instructed the jury with the following adaptation of CALCRIM No. 376: "If you conclude that either defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict a defendant of Robbery and/or Burglary based on those facts alone.

However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Robbery and/or Burglary. (¶) The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of Robbery and/or Burglary. (¶) Remember that you may not convict a defendant of any crime unless you are convinced that each fact essential to the conclusion that a defendant is guilty of that crime has been proved beyond a reasonable doubt."

California appellate courts repeatedly have held CALCRIM No. 376 and its predecessor, CALJIC No. 2.15, do not violate a defendant's due process rights by lowering or shifting the People's burden of proof or by permitting an irrational inference of guilt. For example, the California Supreme Court held that CALJIC No. 2.15 "does not create a mandatory presumption that operates to shift the People's burden of proof to the defense," and does "not create a permissive presumption that violate(s) due process, because '"reason and common sense"' justif(y) the suggested conclusion that defendant's conscious possession and use of recently stolen property tend() to show his guilt of robbery and burglary." (*People v. Parson* (2008) 44 Cal.4th 332, 355, 356; see *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 188, 189 [CALJIC No. 2.15 "did not shift the burden of proof" or "invite (an) irrational inference"); *People v. Lopez* (2011) 198 Cal.App.4th 698, 711 [CALCRIM No. 376 "expressly requires the jury to be 'convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt'" and "does nothing to diminish the prosecution's burden of proof"); *People v. Solórzano* (2007) 153 Cal.App.4th 1026, 1036 ("Like CALJIC No. 2.15, CALCRIM No. 376 neither undermines the presumption of innocence nor violates due process.").) Defendants here have merely "dust(ed) off the old, hackneyed arguments that were thoroughly discredited under similarly worded CALJIC instructions and recycle(d) them before this court." (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1239.) We reject those arguments and agree with the conclusion reached by our colleagues in the Second District: "CALCRIM No. 376 itself accurately describes the law regarding mental state inferences to be drawn from possession of stolen property. The instruction did not infringe on (defendants') constitutional rights." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1577.)

(Lodgment No. 5, <u>People v. Chavira, et al.</u>, No. D063089, slip op. at 14-16.)

In order to be entitled to federal habeas relief based on an allegedly defective jury instruction, Petitioner must demonstrate that the instruction "so infected the entire trial that the resulting conviction violates due process." <u>McGuire</u>, 502 U.S. at 72. "It is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." <u>Id.</u>, quoting <u>Cupp</u>, 414 U.S. at 147.

Clearly established federal law provides that: "A permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved. . . . A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven fact before the jury." <u>Francis v. Franklin</u>, 471 U.S. 307, 314-15 (1985); <u>see also</u> <u>County Court of Ulster County, New York v. Allen</u>, 442 U.S. 140, 156-57 (1979) (holding that a lack of "rational connection" between the presumed fact and the proven facts would render a permissive inference invalid under the Due Process Clause). "A permissive inference is constitutional so long as it can be said 'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'" <u>United States v. Rubio-Villareal</u>, 967 F.2d 294, 296 (9th Cir. 1992) (en banc), quoting <u>Ulster County</u>, 442 U.S at 166 n.28.

The jury here was instructed:

> If you conclude that either defendant knew he possessed property and you can conclude that the property had, in fact, been recently stolen, you many not convict a defendant of robbery and/or burglary based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, you may conclude that the evidence is sufficient to prove he committed robbery and/or burglary. The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where and when the defendant possessed the property along with any relevant circumstances tending to prove his guilt of robbery and/or burglary. Remember that you may not convict a defendant of any crime unless you are

convinced that each fact essential to that conclusion that the defendant is guilty of the crime has been proved beyond a reasonable doubt.

(RT 2448.)

Here, the suggested conclusion in the permissive inference instruction, that Petitioner is guilty of robbery or burglary, has a rational connection to the proven fact, that he knowingly possessed property recently stolen in that robbery or burglary. Because such a conclusion "is more likely than not to flow from the proved fact," the permissive inference is constitutional. Ulster County, 442 U.S. at 166 n.28. The jury was also instructed that they could not convict Petitioner of robbery unless the prosecution had proven guilt beyond a reasonable doubt as to every element of those crimes. As discussed above in claim ten, during closing argument the prosecutor and defense counsel reminded the jury of that burden. Thus, the instruction challenged here did not lessen the prosecution's burden of proof, and did not permit the jury to find Petitioner guilty based merely on his possession of recently stolen property. Rather, it permitted the jury to find Petitioner guilty of robbery or burglary if the inference they drew from his knowing possession of stolen property, combined with corroborating evidence, was sufficient to find him guilty of those crimes beyond a reasonable doubt. That determination is consistent with clearly established federal law which provides that:

> For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption "running through a dozen centuries." Early American cases consistently upheld instructions permitting conviction upon such an inference, and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case. This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process.

Barnes v. United States, 412 U.S. 837, 843 (1973).

The instruction challenged here did not infect the trial with error, much less error which "so infected the entire trial that the resulting conviction violates due process." McGuire, 502 U.S. at 72. It merely informed the jury of a well-established permissive inference referring to "a 'rational connection' between inferred fact and proved fact." Hall v. Haws, 861 F3d 977, 991 (9th Cir. 2017) (finding a due process violation from a similar instruction allowing an inference of guilt of murder from possession of victim's recently stolen ring, but recognizing historic connection between possession of recently stolen property and theft crimes), quoting Ulster County, 442 U.S. at 166 n.28 ("A criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend."). Evidence in this case was presented that watches recently stolen in the charged robberies were found in the apartment Petitioner leased. If the jury found that Petitioner knew they were stolen, and possessed them by virtue of his lease, then the challenged instruction permitted the jury to find Petitioner guilty of robbery, but not on that evidence alone, only if they found that the prosecutor had produced additional evidence of his involvement in the robberies. As set forth throughout this Order, the prosecution produced substantial evidence of Petitioner's involvement in the robberies of the jewelry stores and the burglary of the sporting goods store. Petitioner has not demonstrated that the state court adjudication of this claim, on the basis that the permissive instruction did not violate federal due process, is contrary to, or based on an unreasonable application of, clearly established federal law, or that it is based on an unreasonable determination of the facts.

Furthermore, even if the instruction violated due process, habeas relief would still be unavailable unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637; California v. Roy, 519 U.S. 2, 5 (1996). "Under this standard, an error is harmless unless the 'record review leaves the conscientious judge in grave doubt about the likely effect of an error . . . (i.e.,) that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as

to the harmlessness of the error.'"  Padilla, 309 F.3d at 621-22, quoting McAninch, 513 U.S. at 435 and citing Kotteakos, 328 U.S. at 765 ("[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.")

The Court is not in grave doubt that the permissive inference instruction lowered the burden of proof and allowed the jury to find Petitioner guilty on evidence insufficient to satisfy the beyond a reasonable doubt standard.  The evidence that recently stolen property from some of the robberies was found in an apartment leased to Petitioner was less significant than the evidence he was in possession of equipment used in the crimes, including a distinctive weapon visible in several videos, and the forensic evidence that his fingerprint and DNA were on items connected with the crimes.  The jury was clearly and repeatedly instructed that the prosecution bore the burden of establishing every element of every offense beyond a reasonable doubt.  Thus, there is no basis to find the instruction "had a substantial and injurious effect or influence" on the jury's verdicts.  Brecht, 507 U.S. at 623.

Accordingly, the Court finds that the state court adjudication of claim thirteen is neither contrary to, nor involves an unreasonable application of, clearly established federal law, is not based on an unreasonable determination of the facts, and that any error is harmless.  Habeas relief is denied as to claim thirteen.

## IV.   CONCLUSION

Petitioner's Motion for Stay and Abeyance is **DENIED**, Petitioner's Motion for Relief from Judgment is **DENIED**, and the Petition for a Writ of Habeas Corpus is **DENIED**.

Dated:  February 12, 2018

William Q. Hayes
Hon. William Q. Hayes
United States District Court

15cv1997-WQH (BGS)